# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-1104

_____

Boto Sugar Jima

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: September 24, 2019
Filed: November 8, 2019

_____

Before GRUENDER, ARNOLD, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Boto Sugar Jima seeks review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). The BIA granted the Department of Homeland Security's ("DHS") appeal of an immigration judge's ("IJ") order granting Jima deferral of removal under the Convention Against Torture ("CAT"). For the reasons set forth below, we deny the petition for review.

# I. Background

Jima is a native and citizen of South Sudan whose status was adjusted to lawful permanent resident of the United States in 2006. Jima was born into the Mabaan tribe and fled Sudan at the age of three after his parents were killed during the Sudanese civil war. One of Jima's brothers was also killed during the civil war. Jima and two surviving older brothers settled in Des Moines, Iowa.

In 2016, Jima was charged with willful injury causing bodily harm in violation of Iowa Code § 708.4(2)[1] after he "use[d] a knife to stab the victim numerous times causing bodily injury to the head and upper torso." Jima pled guilty and was sentenced to five years of imprisonment but the five years were suspended in lieu of probation.

In 2017, DHS served Jima with a Notice to Appear on the charge that he was removable from the United States under 8 U.S.C. § 1227 (a)(2)(A)(iii) due to his conviction for an aggravated felony. In response, Jima filed an I-589 application for asylum and withholding of removal.

Before the IJ, Jima testified that he fled the country because his parents and oldest brother were killed during the Sudanese civil war. He further explained his oldest brother was kidnapped and killed by the militia in South Sudan because of his tribal membership. Jima testified he currently has no contact with anyone in South Sudan, but has been told about ongoing violence, about how many people are dying, and about how the Sudanese are "raping everybody." Jima stated he believed that if

---

[1]Due to a scrivener's error Jima's original sentencing order shows a conviction under Iowa Code § 708.4(1), however, a nunc pro tunc order was issued on October 11, 2018, correcting the charge to § 708.4(2).

he were returned to South Sudan both the government and the opposition would kill or torture him due to his tribal affiliation.

After the hearing, the IJ determined Jima was ineligible for either asylum or withholding of removal due to his aggravated felony conviction. The IJ determined that a violation of Iowa Code § 708.4(2) was a crime of violence as defined in 18 U.S.C. § 16(b), and thus qualified as an aggravated felony under 8 U.S.C. § 1101(a)(43)(F). This determination makes the conviction a ground for removal from the United States and made Jima ineligible for asylum or withholding of removal. But the IJ granted Jima deferral of removal under CAT because the IJ found Jima credible, and determined it was more likely than not he would be tortured if returned to South Sudan.

DHS then appealed the IJ's decision granting deferral of removal under CAT to the BIA.

Meanwhile, the Supreme Court issued a decision holding the federal criminal code's definition of "crime of violence" in § 16(b) was unconstitutionally vague. *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018). Importantly, this decision left intact the § 16(a) "crime of violence" definition. As a result, the BIA requested additional briefing from the parties to address whether Jima's conviction under Iowa Code § 708.4 was a removable offense as a crime of violence under 18 U.S.C. § 16(a), rather than under § 16(b) as the IJ had found.

In the supplemental briefs Jima maintained that his conviction under Iowa Code § 708.4(2) was not a crime of violence under § 16(a), but conceded his argument appeared to be foreclosed by Eighth Circuit precedent. In light of Jima's concession that his conviction was a crime of violence, the BIA deemed the issue of removability waived.

The BIA next turned to the IJ's determination that Jima would likely be tortured if returned to South Sudan. The BIA found the IJ clearly erred because the decision was based on a chain of assumptions stemming from South Sudan's general inter-ethnic violence. The BIA also discussed the lack of evidence tying a threat of violence to Jima's particular tribe in South Sudan. Finding clear error, the BIA sustained DHS's appeal, vacated the grant of CAT protection, and ordered Jima's removal to South Sudan.

## II. Analysis

Jima petitions this court for review of the BIA order. First, Jima alleges the BIA incorrectly applied the clear error standard in reviewing the IJ's likelihood determination. Second, Jima maintains that a conviction under Iowa Code § 708.4(2) does not constitute a crime of violence under 18 U.S.C. § 16(a). Reviewing de novo, we deny the petition.

## A. Jurisdiction and Standard of Review

When an alien is removable for having been convicted of an aggravated felony, this court's jurisdiction is limited to "constitutional claims or questions of law." *Gallimore v. Holder*, 715 F.3d 687, 690 (8th Cir. 2013) (quoting 8 U.S.C. § 1252(a)(2)(D)). Whether the BIA weighed the IJ's factual findings under the correct legal standard is a question of law, and as such, this court has jurisdiction to review that narrow question. *Waldron v. Holder*, 688 F.3d 354, 360 (8th Cir. 2012). Additionally, whether a conviction for a particular state offense qualifies as a basis for removability as an aggravated felony under 8 U.S.C. § 1227(a)(2)(A)(iii) is also a question of law. *Roberts v. Holder*, 745 F.3d 928, 930 (8th Cir. 2014). We review such questions of law de novo. *Doe v. Holder*, 651 F.3d 824, 829 (8th Cir. 2011).

## B. Removability for Crime of Violence

An alien convicted of an aggravated felony is removable from the United States. 8 U.S.C. § 1227(a)(2)(A)(iii) ("Any alien who is convicted of an aggravated felony at any time after admission is deportable."). Under the Immigration and Nationality Act a "crime of violence . . . for which the term of imprisonment is at least one year" qualifies as an aggravated felony. 8 U.S.C. § 1101(a)(43)(F). A crime of violence is, in turn, defined in 18 U.S.C. § 16. Under § 16(a), a crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against a person or property of another."

To determine whether a state conviction qualifies as a crime of violence, we typically "apply a categorical approach, looking to the elements of the offense as defined in the . . . statute of conviction rather than to the facts underlying the defendant's . . . conviction." *United States v. Dawn*, 685 F.3d 790, 794 (8th Cir. 2012) (alteration in original) (quoting *United States v. Parks*, 620 F.3d 911, 913 (8th Cir. 2010)). Jima was convicted of a class D felony for willful injury under Iowa Code § 708.4(2). Under § 708.4, "[a]ny person who does an act which is not justified and which is intended to cause serious injury to another commits willful injury," and the act is a class D felony when the person "causes bodily injury to another." Iowa Code § 708.4(2). The Iowa Supreme Court defines "bodily injury" in broad terms. To cause bodily injury means to cause "physical pain, illness, or any impairment of physical condition." *Iowa v. McKee*, 312 N.W.2d 907, 913 (Iowa 1981).

Notably, § 708.4(2) does not contain an explicit force element as included in 18 U.S.C. § 16(a)'s crime of violence definition. But lacking an explicit force element is not fatal. In *United States v. Rice*, we held an Arkansas offense involving "intentionally or knowingly, without legal justification, caus[ing] physical injury" was a crime of violence because it contained an implied force element. 813 F.3d 704, 705–06 (8th Cir. 2016) (quoting Ark. Code Ann. § 5-13-202 (2006)). We reasoned

that because the defendant was convicted of causing physical injury to another, the offense must include the use of physical force to commit such injury as an implied element. *Id.* at 706. Relying on the Supreme Court's decision in *United States v. Castleman*, we held a conviction under the Arkansas statute, although lacking an explicit force element, "included the use of physical force as an element because '[i]t is impossible to cause bodily injury without applying force.'" *Id.* at 706 (alteration in original) (quoting *United States v. Castleman*, 572 U.S. 157, 171 (2014)).

Our analysis in *Rice* applies to this case. One cannot cause bodily injury to another without using the force capable of producing that injury. Under *Castleman*, even indirect harm contains an element of force. 572 U.S. at 171. We conclude Jima's conviction was a crime of violence in satisfaction of 18 U.S.C. § 16(a) and a valid basis for removal under 8 U.S.C. § 1227(a)(2)(A)(iii) because it is "impossible to cause bodily injury without applying [the] force" necessary to cause the injury. *Rice*, 813 F.3d at 706 (quoting *Castleman*, 572 U.S. at 171).

## C. Application of Clear Error Review

Next, Jima alleges the BIA incorrectly applied the clear error standard in reviewing the IJ's decision. The BIA reviews an IJ's findings of fact, including credibility determinations and the likelihood of future events, under a clearly erroneous standard. *See Flores v. Holder*, 699 F.3d 998, 1003 (8th Cir. 2012); 8 C.F.R. § 1003.1(d)(3)(i). Under clear error review, the BIA may not overturn an IJ's determination simply because it would have decided the facts differently. *See Garcia-Mata v. Sessions*, 893 F.3d 1107, 1110 (8th Cir. 2018). "[T]he BIA does not have authority to engage in factfinding, except to take administrative notice of commonly known facts." *Nabulwala v. Gonzales*, 481 F.3d 1115, 1118 (8th Cir. 2007) (citing 8 C.F.R. § 1003.1(d)(3)(iv)).

-6-

Here, the BIA correctly identified and explicitly stated it must review the IJ's likelihood determination under a clear error standard. In undertaking this analysis, the BIA outlined and considered the IJ's factual findings without engaging in any factfinding itself. The BIA concluded Jima's fears were "largely based on speculation" and the IJ's "likelihood finding" was "based on a chain of assumptions stemming from South Sudan's general inter-ethnic violence." The BIA applied its precedent that an IJ clearly errs when relying solely on a "chain of assumptions and fear of what might happen," because such assumptions do not demonstrate a clear likelihood of torture to the petitioner as required for relief under CAT. *Ademo v. Lynch*, 795 F.3d 823, 830 (8th Cir. 2015) (quoting *Matter of M-B-A-*, 23 I & N Dec. 474, 479–80 (BIA 2002)). Under BIA precedent, a petitioner must establish "'that each link in the hypothetical chain of events leading to the claim of likely torture' is more likely than not to occur." *Id.* (quoting *In re S-V-*, 22 I & N Dec. 1306, 1313 (BIA 2000)).

Under CAT, the "existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country." *Ademo*, 795 F.3d at 831 (quoting *In re S-V-*, 22 I & N Dec. 1306, 1313 (BIA 2000)). Instead, the petitioner must show "specific grounds exist that indicate the individual would be personally at risk." *Id.* (quoting same). The BIA identified the IJ's clear error in Jima's case by showing that the IJ, rather than examining the likelihood of Jima's prospective torture, instead looked at the likelihood of a pattern of gross or mass violations of human rights in South Sudan. The IJ failed to clearly articulate a more personalized fear of torture specific to Jima.

It must be noted, "torture" denotes more than a generalized fear of bodily injury. Torture is an "extreme form of cruel and inhumane treatment" inflicted with the purpose of obtaining information, punishment, intimidation, or coercion. 8 C.F.R.

§ 1208.18(a)(1)–(2). In this case, the BIA highlighted how the IJ did not discuss any motive for the South Sudanese to torture Jima; it instead discussed the generalized violence to which Jima may be exposed on return.

The BIA did not walk through the chain of assumptions which it determined the IJ undertook, but one can easily map them out. First, one must assume Jima would be relocated to a part of South Sudan currently engaged in a civil war and experiencing human rights violations. Next, one must assume Jima, as a member of the Mabaan tribe, would be persecuted. And finally, one must assume the violence Jima could suffer would amount to an extreme form of cruel and inhumane treatment, that is, torture. The BIA clearly noted that the IJ did not demonstrate why it was more likely than not each of these steps would occur.

As the BIA noted, this string of assumptions, although plausible, is nothing more than a chain of hypothetical inferences and does not demonstrate a clear likelihood of torture. As such, the BIA conducted a logical, clear error analysis and reached a permissible conclusion.

## III. Conclusion

For the foregoing reasons, we deny the petition for review.

_____