# United States Court of Appeals
## For the Eighth Circuit
_____

No. 18-3550
_____

Sobura Juma Lasu

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: November 12, 2019
Filed: July 31, 2020
_____

Before GRUENDER, KELLY, and ERICKSON, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Sobura Juma Lasu petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA") denying Lasu's application for deferral of removal under the United Nations Convention Against Torture ("CAT"). We deny the petition.

# I.

Lasu, a native of Egypt and a citizen of South Sudan, was admitted to the United States as a refugee in 2000. Though he was born in Egypt and has never visited South Sudan, Lasu claims derivative membership in the minority Yambara and Pojulu ethnic tribes—the Sudanese tribes of his mother and father, respectively.

Lasu was convicted of possession of marijuana in 2016 and of attempt to deliver a controlled substance in 2017, both in violation of Nebraska law. On account of these convictions, the Department of Homeland Security ("DHS") initiated removal proceedings. In April 2018, the Immigration Judge ("IJ") found Lasu removable as charged.

Lasu applied for refugee adjustment of status, asylum, withholding of removal, and relief under the CAT. In May 2018, the IJ denied Lasu's application for refugee adjustment of status, found that Lasu was ineligible for asylum because he had been convicted of a particularly serious crime, and denied Lasu withholding of removal on the same grounds. But the IJ granted deferral of removal under the CAT because it concluded that Lasu was more likely than not to experience torture in South Sudan, citing Lasu's membership in an ethnic minority tribe and the ongoing ethnic violence in the country. Though the IJ granted relief under the CAT as to South Sudan, it ordered Lasu deported to Egypt.

DHS appealed to the BIA, contesting the IJ's decision to grant relief under the CAT. The BIA concluded that Lasu had not established that it was more likely than not that he would be tortured by or with the consent of South Sudanese officials. As a result, the BIA reversed the IJ and ordered Lasu removed from the United States. Lasu timely petitioned for review of the BIA's decision.

## II.

Before turning to the merits of Lasu's arguments, we must first address whether we have jurisdiction. We are statutorily barred from reviewing any final order of removal against an alien who—like Lasu—is removable by reason of having committed a controlled substance offense except for "constitutional claims or questions of law." *See* 8 U.S.C. § 1252(a)(2)(C)-(D); *see also Hanan v. Mukasey*, 519 F.3d 760, 763 (8th Cir. 2008). We previously construed this jurisdictional limitation, often called the criminal-alien bar, to apply to CAT claims because we concluded a denial of a deferral of removal under the CAT constituted a final order of removal. *See Lovan v. Holder*, 574 F.3d 990, 998 (8th Cir. 2009).

This term, however, the Supreme Court abrogated this reasoning, clarifying that "Congress's decision to bar judicial review of factual challenges to final orders of removal does not bar judicial review of factual challenges to CAT orders." *Nasrallah v. Barr*, 590 U.S. ---, 140 S. Ct. 1683, 1692 (2020). Thus, in the context of a CAT claim, we are no longer precluded by the criminal-alien bar from reviewing factual challenges, and the Supreme Court has instructed that "[t]he standard of review [for factual challenges] is the substantial-evidence standard." *Id.* This standard is highly deferential, and the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." *Id.* We review constitutional claims and questions of law *de novo*. *Kassim v. Barr*, 954 F.3d 1138, 1140 (8th Cir. 2020).

## A.

Lasu first argues that the BIA incorrectly applied the clear error standard of review to the IJ's findings of fact and improperly engaged in its own fact-finding. In response, the Government suggests that we lack jurisdiction to review these issues because Lasu did not exhaust them before the BIA. We conclude we are precluded from reviewing these issues because Lasu had not exhausted his administrative

remedies as to these issues when he filed his initial petition, and because, after exhausting, he never properly petitioned this court to review them.

To properly address these contentions, it is first necessary to set out some of the procedural history of this case. After the IJ issued its decision granting Lasu CAT relief on May 31, 2018, DHS appealed to the BIA. The BIA subsequently reversed the IJ on November 2, 2018. Lasu then filed both a petition for review of the BIA's November 2, 2018 order to this court and a motion for reconsideration of its November 2, 2018 to the BIA, raising in both his petition and his motion for reconsideration issues not previously presented to the BIA. Lasu did not petition this court to review the BIA's decision in response to his motion for reconsideration, and we became aware of it only when the Government mentioned it in its briefing. At oral argument, we inquired as to whether Lasu intended to petition for review of the BIA's denial of his motion to reconsider, and Lasu's counsel informed the court that Lasu did not intend to do so. To date, Lasu has not provided the court with either a copy of his motion for reconsideration or the corresponding BIA decision.

We treat a petition for review of an initial BIA order and a petition for review of the denial of a motion for reconsideration as "two separate petitions filed to review two separate final orders." *Esenwah v. Ashcroft*, 378 F.3d 763, 765 (8th Cir. 2004). For this reason, an alien may petition for review of the initial order of removal or an order responsive to a motion to reconsider, *see id*, or he may petition for review of both orders by consolidating his petitions for review in the same action, *see Ramirez v. Sessions*, 902 F.3d 764, 769-70 (8th Cir. 2018) (considering separate petitions in turn); 8 U.S.C. § 1252(b)(6) ("[A]ny review sought of a motion to reopen or reconsider the order shall be consolidated with the review of the order.").

Because an order denying a motion to reconsider is separate and distinct from the BIA's removal order, to present issues properly to this court that were initially raised to the BIA in a motion for reconsideration, an alien must petition for review of the denial of the relevant motion for reconsideration. *See Yun-Zhen Ma v. Holder*, 358 F. App'x 283, 284 n.2 (2d Cir. 2009) (per curiam) (declining to review the BIA's

denial of petitioner's motion for reconsideration where the alien did not petition for review of that denial); 8 U.S.C. § 1252(b)(4)(A)("[T]he court of appeals shall decide the petition only on the administrative record on which the order of removal is based."); *see also Stone v. INS*, 514 U.S. 386, 393-94 (1995) (recognizing that an alien must petition for review of a motion to reconsider). Failure to do so precludes our review of issues initially presented to the BIA in the motion for reconsideration, even if those same issues were argued in the petition to this court for review of the underlying initial order. *Cf. Boudaguian v. Ashcroft*, 376 F.3d 825, 827 (8th Cir. 2004) (holding that the court would not review arguments concerning the BIA's removal order when an alien only petitioned for review of his motion to the BIA to reconsider).

Drawing from these principles, we conclude that Lasu's arguments that the BIA incorrectly applied the clear error standard of review and engaged in improper fact-finding are not properly before us. *See id.* First, the issues were not raised before the BIA during the initial appeal from the IJ. Thus, Lasu had not exhausted the issues when he first petitioned this court for review. *See Marambo v. Barr*, 932 F.3d 650, 656 (8th Cir. 2019); *see also Meng Hua Wan v. Holder*, 776 F.3d 52, 57 (1st Cir. 2015) (holding that when a petitioner complains of impermissible fact-finding by the BIA, "that claim is unexhausted unless and until the alien files a timely motion asking the BIA to reconsider its actions").

And second, though Lasu subsequently exhausted all administrative remedies by filing a motion for reconsideration before the BIA, *see Escoto-Castillo v. Napolitano*, 658 F.3d 864, 866 (8th Cir. 2011), he failed to petition for review of the denial of that motion, *see* 8 U.S.C. § 1252(b)(6). Indeed, when asked at oral argument, Lasu maintained that he was not petitioning for review of the BIA's denial of his motion for reconsideration. Thus, the issues first raised to the BIA in the motion for reconsideration are not properly before this court. *See Yun-Zhen Ma*, 358 F. App'x at 284 n.2.

B.

Lasu next argues that the BIA erred in finding that he had failed to meet his burden of persuasion that he is more likely than not to be tortured if returned to South Sudan. Lasu's petition here proceeds in two movements: first, he argues the BIA required him to provide more specific grounds to prove he faces a likelihood of torture than is required by our precedent, and second, he argues that the BIA misinterpreted the CAT's specific-intent requirement.

"We review questions of law de novo." *Cherichel v. Holder*, 591 F.3d 1002, 1010 (8th Cir. 2010). We review the agency's factual determinations for substantial evidence. *Nasrallah*, 140 S. Ct. at 1692. "To qualify for relief under the CAT, an alien must show 'that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'" *Malonga v. Mukasey*, 546 F.3d 546, 554-55 (8th Cir. 2008) (quoting 8 C.F.R. § 1208.16(c)(2)).

This circuit and five others have determined that the first element of a CAT claim, the likelihood determination, is a factual inquiry. *Jima v. Barr*, 942 F.3d 468, 473 (8th Cir. 2019) (treating the more-likely-than-not finding as a fact question); *Ademo v. Lynch*, 795 F.3d 823, 831 (8th Cir. 2015) (reviewing likelihood finding for substantial evidence); *see also Rosiles-Camarena v. Holder*, 735 F.3d 534, 537, 539 (7th Cir. 2013) (collecting cases and explaining that predictive findings are factual findings). As a result, the BIA reviews an IJ's determination of fact regarding the likelihood of torture—the present likelihood of a future event—for clear error, *see Jima*, 942 F.3d at 473, and we review the BIA's clear error determination for substantial evidence, *Ademo*, 795 F.3d at 828 (noting that "we review the [BIA's] findings of fact, and any findings of the immigration judge adopted by the [BIA], under the deferential 'substantial evidence' standard" (quoting *Martinez-Galarza v. Holder*, 782 F.3d 990, 993 (8th Cir. 2015)). This likelihood determination is a probabilistic assessment informed by the facts and circumstances of each individual case. *See Rosiles-Camarena*, 735 F.3d at 539; *Kaplun v. Att'y Gen. of U.S.*, 602 F.3d 260, 269-71 (3d Cir. 2010).

-6-

In previous cases, we endorsed the BIA's reasoning that "the existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country." *Ademo*, 795 F.3d at 831. Instead, "[s]pecific grounds must exist that indicate the individual would be personally at risk." *Id.*

Adopting a strained reading of these cases, Lasu tries to convert what is a factual inquiry into a legal claim by arguing that the BIA misapplied our precedent as to how "specific" a threat must be to establish a likelihood of torture. His attempt is unavailing. The "specificity required by precedent," as Lasu frames it, is merely that which is necessary to show that the petitioner is more likely than not to be tortured if removed to the relevant country. *See Omar v. Barr*, 962 F.3d 1061, 1064-65 (8th Cir. 2020); *Ademo*, 795 F.3d at 831; *see also Molina-Avila v. Sessions*, 907 F.3d 977, 982 (7th Cir. 2018) ("We do not suggest that evidence of torture of similarly situated individuals is irrelevant to a CAT petition for deferral. But the ultimate question is whether the evidence relied upon establishes that the petitioner will more likely than not be tortured if removed.").

Lasu argues next that the BIA misinterpreted the specific-intent requirement of the CAT when it found that he had not shown anyone in South Sudan intended to torture him. The definition of torture is a legal issue, *see Cherichel*, 591 F.3d at 1009, and the relevant regulations define torture "as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity," 8 C.F.R. § 208.18(a)(1). The regulations make clear that "[i]n order to constitute torture, an act must be *specifically intended* to inflict severe physical or mental pain." *Id.* § 208.18(a)(5) (emphasis added). As a result, we have emphasized that an alien "may not obtain relief under the CAT unless he can show that his prospective torturer

-7-

has the goal or intent of inflicting severe physical or mental pain or suffering upon him." *Cherichel*, 591 F.3d at 1013.

On this point, the BIA's opinion is not a picture of clarity. In the midst of a discussion regarding the likelihood of Lasu facing torture, the BIA found that Lasu had not shown anyone he "fears has the specific intent to inflict severe pain or suffering on him," citing our opinion in *Cherichel*. 591 F.3d at 1016-17. Yet *Cherichel* and its discussion of the CAT's specific-intent requirement did not address an alien's likelihood burden. It instead defined, based on the relevant regulations, what acts amounted to torture, confirming that torture requires intent to cause severe harm, not simply intent to carry out an act that ultimately results in harm. *See id.* at 1012-14 (discussing 8 C.F.R. § 208.18(a)). Thus, Lasu contends, the BIA's comment could be read in two ways, both of which would require remand. One the one hand, the BIA may have misstated the law, conflating the "specific intent" necessary for an act to amount to torture with the "specific grounds" required to show a likelihood of the alien facing that torture. On the other hand, the BIA may have made a factual conclusion, unsupported by substantial evidence, that Lasu had not demonstrated South Sudanese authorities specifically intend the severe harm he alleges is inflicted on minority tribe members in the country. In response, the Government counters that "it is clear that the [BIA] . . . was correcting an error made by the immigration judge that merely being a member of a minority tribe was sufficient for [Lasu] to satisfy the 'specific intent' element for CAT protection."

We conclude all three of these arguments are incorrect and instead find that, when the BIA's statement is read in context, it is clear that the BIA was simply explaining its likelihood determination. The BIA did not assert that the alleged harm inflicted by South Sudanese authorities was not specifically intended, because, for instance, it was merely the result of an unfortunate economic or social situation. *See Cherichel*, 591 F.3d at 1009, 1016-17 (explaining that the poor conditions in Haitian prisons did not amount to torture because it was the the result of a fiscal inability to maintain the prisons). It instead reasoned that regardless of whether they intended to harm others, Lasu had not shown that South Sudanese authorities intended to harm

*him*, pointing to the facts that Lasu had not established his tribe is targeted by South Sudanese authorities and also that his mother had traveled to the country in 2013 and was not threatened during her stay. Thus, the BIA did not challenge the IJ's finding that the South Sudanese government intends to commit torture; it merely found that Lasu had not shown that it was more likely than not that the government would torture him—a factual determination distinct from that of specific intent.

Elsewhere, Lasu takes issue with the BIA's conclusion that the IJ clearly erred in determining Lasu was likely to face torture, suggesting this conclusion was unsupported by substantial evidence because "the record evidence was so compelling that no reasonable fact finder could fail to find" that Lasu was eligible for relief under the CAT. The IJ found that Lasu demonstrated he likely would be tortured based solely on his claims that he is a member of a minority Equatorial tribe and that violence is occurring along ethnic lines in South Sudan. The BIA reversed, applying its precedent that an IJ clearly errs when it relies solely on a "chain of assumptions," *In re M-B-A-*, 23 I. & N. Dec. 474, 479 (BIA 2002), or strings "together a series of suppositions," *In re J-F-F-*, 23 I. & N. Dec. 912, 917 (A.G. 2006), and concluding that Lasu had not shown a likelihood of torture because "the record does not establish that [his specific tribe] is targeted for torture by the government in South Sudan."

We conclude the BIA's decision is supported by substantial evidence because the BIA correctly concluded that Lasu must show more than a pattern of general ethnic violence in South Sudan to meet the CAT's likelihood requirement.[1]  *See*

---

[1]The dissent evaluates under a "sufficient justification" standard of review the BIA's conclusion that the IJ clearly erred in finding Lasu is more likely than not to face torture in South Sudan. *See infra*, at 1, 3. We have previously evaluated the BIA's findings of clear error under a "substantial evidence" standard or review. *See Perez-Rodriguez v. Barr*, 951 F.3d 972, 974-75 (8th Cir. 2020); *see also Kang v. Att'y Gen. of the U.S.*, 611 F.3d 157, 163-64 (3d Cir. 2010) (reviewing for substantial evidence the BIA's determination that an IJ clearly erred when it found the petitioner showed a likelihood of torture). *But see Omar*, 962 F.3d at 1064-65 (reviewing for

*Ademo*, 795 F.3d at 831; *see also Omar*, 962 F.3d at 1065 (finding no error in the BIA's determination that the IJ committed clear error when "evidence did not address" whether the petitioner's clan "in particular" was subject to torture). Though the record reflects that ethnic violence is occurring in South Sudan, Lasu needed to demonstrate that he would more likely than not be tortured by South Sudanese authorities. *See Pelinkovic v. Ashcroft*, 366 F.3d 532, 542 (7th Cir. 2004) ("[T]he Pelinkovics' failure to make a particularized showing that any of them would more likely than not be subject to torture upon their return, as differentiated from the general risk shared by all ethnic Albanians in Montenegro, dooms their case."); *Ngure v. Ashcroft*, 367 F.3d 975, 993 (8th Cir. 2004) (noting that reports that the Kenyan government tortured student leaders was insufficient because petitioner "has not provided evidence that he is similarly situated" to those individuals); *Tarrawally v. Ashcroft,* 338 F.3d 180, 182-83, 188 (3d Cir. 2003) (rejecting a Sierra Leone petitioner's CAT claim even though the government committed widespread human rights abuses, including arbitrary killing of civilians, because those findings "alone are insufficient to demonstrate that it is more likely than not that a particular civilian . . . will be tortured by [the government]").

The fact that Lasu is a member of one of sixty ethnic minority tribes that "could be" tortured does not compel the conclusion that he is more likely than not to be tortured. *See Omar*, 962 F.3d at 1064-65; *cf. Bernard*, 881 F.3d at 1047-49 (holding that generalized reports of violence against LGBT individuals did not show that a specific person was more likely than not to be tortured on account of their sexual orientation). Here, the BIA identified the IJ's error, showing that the IJ, rather than examining the likelihood that Lasu will face torture, instead looked at the

"sufficient justification"). Lasu himself invoked the substantial evidence standard when challenging the BIA's conclusion, however, and we conclude we need not plumb the distinction between the standards of review here because we would come to the same conclusion under either standard. *See Omar*, 962 F.3d at 1064-65 (finding "sufficient justification" for BIA's determination that an IJ clearly erred when granting CAT relief when the petitioner presented no credible evidence concerning violence directed against his clan or any other grounds that he was "personally . . . more likely than not [to] suffer harm rising to the level of torture").

-10-

likelihood that a member of any ethnic minority tribe in South Sudan will suffer from torture. *See Jima*, 942 F.3d at 473. Thus, the "IJ failed to clearly articulate a more personalized fear of torture specific to [Lasu]." *Id.*

Accordingly, we conclude that a "reasonable adjudicator could have found the evidence insufficient to establish a likelihood of torture." *See Ademo*, 795 F.3d at 831.

## III.

For the foregoing reasons, we deny the petition.

KELLY, Circuit Judge, dissenting.

I would grant Lasu's petition for review because the Board of Immigration Appeals (BIA) provided insufficient justification to overturn the immigration court's grant of protection from removal under the Convention Against Torture (CAT). See Omar v. Barr, 962 F.3d 1061, 1064 (8th Cir. 2020).

A noncitizen is entitled to CAT protection if they establish by a preponderance of the evidence that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); see Lopez-Amador v. Holder, 649 F.3d 880, 886 (8th Cir. 2011); Shaghil v. Holder, 638 F.3d 828, 835 (8th Cir. 2011). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1); Shaghil, 638 F.3d at 835. To determine the likelihood of torture, an adjudicator must consider "all evidence relevant to the possibility of future torture," including evidence of "gross, flagrant or mass violations of human rights within the country of removal," whether "the applicant could relocate to a part of the country of removal where he or she is

not likely to be tortured," and any other "relevant information regarding conditions in the country of removal." 8 C.F.R. § 1208.16(c)(3).

The Immigration Judge (IJ) held a hearing on Lasu's application for CAT relief and found that Lasu is a member of a minority Equatorial tribe in South Sudan. Based on detailed country reports from the U.S. Department of State, the IJ recognized South Sudan is "a country where gross and flagrant human rights violations are taking place."[2] Beginning in 2016, the government of South Sudan, controlled by the majority Dinka tribe, intensified its system of ethnic cleansing across "all parts of the country." Severe and systematic violations of human rights include "ethnically based targeted killings of civilians, extrajudicial killings, abuse, and mass forced displacement of approximately four million civilians." Other pervasive violations involve the "torture, intimidation, and unlawful detention of civilians."

The IJ found that "the majority of the violence" in South Sudan occurs along ethnic lines. Since 2016, South Sudanese government forces have been "responsible for an increasing number of conflict-related abuses against civilians." Government forces engage "in acts of collective punishment and revenge killings against civilians assumed to be opposition supporters, often based on their ethnicity." The United Nations has reported "a pattern of ethnic cleansing and population engineering." Atrocities against ethnic minorities include "unlawful killings, rape and gang rape employed as a weapon of war, arbitrary detention and torture, [and] enforced disappearances."

---

[2]Country reports serve an important function in CAT cases. The agency accords these reports "special weight" because they are derived from "the collective expertise and experience of the Department of State, which has diplomatic and consular representatives throughout the world." Matter of H-L-H & Z-Y-Z-, 25 I. & N. Dec. 209, 213 (BIA 2010) (cleaned up) (citing Aguilar-Ramos v. Holder, 594 F3d 701, 705 n.6 (9th Cir. 2010); Xiao Ji Chen v. U.S. Dep't of Justice, 471 F.3d 315, 341 (2d Cir. 2006)).

The IJ concluded that, given the overwhelming evidence of "severe incidents of targeted ethnic violence in South Sudan," Lasu—who is undisputedly a member of an ethnic minority tribe—will more likely than not be targeted for torture by South Sudan's government. And because the entire country of South Sudan is consumed by ethnic violence perpetrated by the government, the IJ found that Lasu "could not reasonably relocate to a part of South Sudan where he is not likely to be tortured." See Yakovenko v. Gonzales, 477 F.3d 631, 637 (8th Cir. 2007) (explaining that CAT relief requires that the conditions within the country of removal "make internal relocation an unsafe and unreasonable alternative"). Because Lasu "is more likely than not to be tortured in South Sudan," the IJ granted a limited form of protection from removal: deferral of removal under CAT.[3] See 8 C.F.R. § 1208.17; Lopez-Amador, 649 F.3d at 886.

The government appealed to the BIA, which reversed the IJ's grant of limited protection and ordered Lasu removed to South Sudan. In doing so, the BIA decided the IJ had clearly erred by granting relief because the record "does not support the conclusion based on [Lasu]'s ethnicity alone that he is more likely than not to experience torture in South Sudan." See Jima v. Barr, 942 F.3d 468, 473 (8th Cir. 2019) (holding that an IJ's conclusion about a noncitizen's likelihood of facing torture is a factual finding subject to clear-error review by the BIA).

We have jurisdiction to review both legal and factual challenges to the BIA's decision to deny CAT relief. Omar, 962 F.3d at 1063 (citing Nasrallah v. Barr, 140 S. Ct. 1683, 1688 (2020)). When the BIA overturns the IJ's factual findings as clearly erroneous, we consider whether the BIA "provided sufficient justification for its determination." Id. at 1064 (citing Wu Lin v. Lynch, 813 F.3d 122, 129 (2d Cir. 2016)). This means the BIA "must adequately explain why it rejected the IJ's finding and identify reasons grounded in the record that are sufficient to satisfy a reasonable mind that there was clear error." Id.

_____

[3]Deferral of removal under CAT does not confer lawful status or even entitle the noncitizen to release from immigration detention, and it may be terminated in the future. 8 C.F.R. § 1208.17(b); Doe v. Holder, 651 F.3d 824, 829 (8th Cir. 2011).

In my view, the BIA provided insufficient justification for its decision to reverse the IJ's grant of CAT protection.[4]  See id.; see also Anderson v. City of Bessemer City, 470 U.S. 564, 573 (1985) (explaining that clear-error review "plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently").  To gain deferral of removal under CAT, Lasu was required to demonstrate, by a preponderance of the evidence, that he will more likely than not face torture in South Sudan.  See 8 C.F.R. § 1208.16(c)(2); Lopez-Amador, 649 F.3d at 886; Shaghil, 638 F.3d at 835.  The BIA impermissibly required a greater showing from Lasu, and its decision lacks support in either the record or our case law.

The BIA reasoned that "the existence of a consistent pattern of gross, flagrant, or mass violation of human rights in a particular country does not, as such, constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture upon his or her return to that country."  See Ademo v. Lynch, 795 F.3d 823, 831 (8th Cir. 2015).  But Lasu did not rely solely on a consistent pattern of mass violations of human rights in South Sudan to argue for CAT protection.  Rather, as the IJ found, Lasu credibly demonstrated that he is *particularly* likely to be targeted for torture because he is a member of an ethnic minority tribe.  The majority Dinka tribe in charge of South Sudan's government is currently undertaking a comprehensive system of "population engineering" and "ethnic cleansing" against minority tribes throughout the country.  Lasu belongs to a minority ethnic tribe.  As a result, he is particularly at risk.  This case is not like

_____

[4]Like the court, I see no need in this case to determine any difference between the "sufficient-justification" and "substantial-evidence" standards of review.  Ante at 9 n.1.  Even assuming these standards are not the same, I would find that the BIA erred under either.  See Nasrallah, 140 S. Ct. at 1692 (explaining that, on substantial-evidence review, the agency's "findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary").  Given the record of widespread torture and killing of ethnic minorities in South Sudan, any reasonable adjudicator would be compelled to affirm the IJ's decision to grant Lasu CAT protection.  See id.

-14-

Ademo, where we upheld the BIA's denial of CAT relief because the petitioner did not provide credible testimony and the country reports for Ethiopia showed violence in only "some instances." See id.

The BIA also faulted Lasu for not showing that his "specific" minority tribe is "targeted for torture by the government in South Sudan." But the BIA's concern for specificity is not warranted when the record shows that the human-rights atrocities in South Sudan are widespread and occur along "ethnic lines." Indeed, the State Department and the United Nations have reported "ethnically based targeted killings of civilians, extrajudicial killings, abuse, and mass forced displacement of approximately *four million civilians*." The violence against ethnic minorities in South Sudan is rampant. Government forces commit "acts of collective punishment and revenge killings against civilians assumed to be opposition supporters, often based on their ethnicity." The BIA's conclusion that Lasu failed to introduce evidence about violence against his specific tribe is unreasonable on this record, which shows systematic violence against all ethnic minorities in South Sudan.

Similarly, the BIA decided that the record does not establish that South Sudanese authorities have "the specific intent to inflict severe pain or suffering on [Lasu]." We have explained a person seeking CAT relief must establish that "a persecutor specifically intends to inflict severe pain or suffering upon his victim." Cherichel v. Holder, 591 F.3d 1002, 1016–17 (8th Cir. 2010). But Lasu satisfies this requirement. There is no question that South Sudanese authorities specifically intend to torture and kill ethnic minorities like Lasu. Indeed, that specific intent is integral to South Sudan's system of "ethnic cleansing and population engineering."

The BIA further supported its decision to deny CAT protection by noting that Lasu's mother had traveled to South Sudan in 2013 and was not threatened during her stay. But this ignores the record. The country reports on which the IJ relied expressly state that, beginning in 2016, ethnic violence erupted in South Sudan and "spread to all parts of the country." That Lasu's mother did not experience violence in 2013 has little, if any, bearing on Lasu's current risk of torture upon removal.

-15-

Our recent decision in Omar v. Barr does not require a different result. There, we upheld the BIA's decision to deny CAT relief. Omar, 962 F.3d at 1065. The IJ had determined that it was more likely than not that Omar would face torture in Somalia based on his membership in a minority clan and his status as a person infected with the human immunodeficiency virus. Id. at 1063. The BIA decided the IJ had clearly erred by forecasting that Omar would likely be tortured in Somalia. Id. We affirmed the BIA's judgment, explaining it properly rejected the IJ's decision that depended on "conclusory" testimony "undeserving of the weight that the IJ accorded it." Id. at 1064. The IJ also relied on country reports showing that "minority groups *in general* are *disproportionately* subject to killings and torture" in Somalia. Id. at 1065 (emphasis added). We agreed with the BIA that this finding was insufficiently specific to show that Omar would be subject to torture. Id. (citing Ademo, 795 F.3d at 831).

Here, by contrast, Lasu submitted credible testimony and other detailed evidence to establish that he will likely face torture in South Sudan. The BIA did not take issue with the IJ's decision to credit certain testimony indicating Lasu's risk of torture. Cf. id. at 1064. And the country reports in the record demonstrate a far greater threat of torture than the "general" or "disproportionate" risk of torture that we rejected in Omar. Cf. id. at 1065. As explained above, the IJ found systematic and country-wide violence against all ethnic minorities in South Sudan, including "a pattern of ethnic cleansing and population engineering" inflicted by government forces. South Sudan is not a country where minorities are merely "disproportionately" subject to violence. Cf. id. Instead, the government's program of ethnic cleansing specifically targets all ethnic minorities for torture, and even death. This is more than sufficient, under our case law, to show Lasu's risk of torture in South Sudan. Because the BIA provided insufficient justification for its contrary

decision to deny CAT protection, I would grant Lasu's petition for review.[5]  See id. at 1064.  I respectfully dissent.

_____

[5]Because this conclusion is sufficient to grant Lasu's petition for review, I would not reach the issues addressed in Part II.A of the court's opinion.  See Omar, 962 F.3d at 1064.