# United States Court of Appeals
## For the Eighth Circuit

_____

No. 19-2918
_____

Mohamud Mohamed Hassan

*Petitioner*

v.

Jeffrey A. Rosen, Acting Attorney General of United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: October 22, 2020
Filed: January 15, 2021
_____

Before SMITH, Chief Judge, LOKEN and GRUENDER, Circuit Judges.
_____

GRUENDER, Circuit Judge.

Petitioner Mohamud Mohamed Hassan asked an Immigration Judge ("IJ") and then the Board of Immigration Appeals ("BIA") to defer his removal to Somalia under the Convention Against Torture ("CAT"). For the following reasons, we deny Hassan's petition for review of the IJ's and BIA's decisions denying relief.

Hassan, a Somali native, entered the United States in 2001 under a false passport. Subsequently, the U.S. Department of Homeland Security sought Hassan's removal under 8 U.S.C. § 1227(a)(1)(A). The IJ ordered Hassan removed to Somalia, the BIA affirmed the IJ's decision, and we summarily denied Hassan's petition for review. *Hassan v. Holder*, 446 F. App'x 822, 823 (8th Cir. 2012) (per curiam).

Hassan then moved to reopen his case, which the BIA granted, remanding the case to the IJ. On remand, Hassan asked the IJ to defer his removal under the CAT, arguing that he was likely to be tortured if removed to Somalia. The IJ denied Hassan's request, and the BIA affirmed the IJ's decision. Hassan petitions us to review those decisions.

Where, as here, the BIA issues a separate opinion, rather than summarily affirming the IJ's decision, we review the BIA's decision as the final agency action. *See Alzawed v. Barr*, 970 F.3d 997, 1000 (8th Cir. 2020). To the extent the BIA adopted the IJ's reasoning, as here, we review the IJ's decision too. *See id.* We review legal conclusions *de novo* and factual findings for substantial evidence. *Id.* Substantial-evidence review is highly deferential, and we will unsettle factual findings only if "any reasonable adjudicator would be compelled to conclude to the contrary." *Lasu v. Barr*, 970 F.3d 960, 964 (8th Cir. 2020).

The CAT prohibits the Government from removing an alien to a country where he is more likely than not to be tortured. *Doe v. Holder*, 651 F.3d 824, 828 (8th Cir. 2011). "Torture" is defined as certain acts that cause "severe pain or suffering, whether physical or mental . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). In considering the likelihood of torture, the IJ and BIA must consider "the aggregate risk of torture from all sources." *Abdi Omar v. Barr*, 962 F.3d 1061, 1065 (8th Cir. 2020).

Before the IJ and BIA, Hassan argued that the Somali government would torture him for belonging to a minority clan and that Al-Shabaab (a terrorist organization) would torture him for minority-clan membership, being "westernized," and having been on a failed repatriation flight. The IJ and BIA concluded that Hassan was unlikely to be tortured for any of these reasons. They alternatively found that any torture by Al-Shabaab would not trigger CAT relief because it would not be done with the Somali government's acquiescence and that Hassan could avoid any risk of torture from Al-Shabaab by relocating to Mogadishu. Hassan disputes these conclusions.

First, Hassan challenges the IJ's and BIA's conclusions that he is unlikely to be tortured by the Somali government or Al-Shabaab for minority-clan membership because Hassan's clan, the Begadi, is not a minority clan. The record indicates that the Begadi clan is actually a sub-clan of a "noble" clan with major representation in the Somali government. Hassan cites only his own testimony (and inapposite affidavits) to support his contrary argument. Given the lopsided record support for the IJ's and BIA's conclusions, we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary." *Lasu*, 970 F.3d at 964. Thus, substantial evidence supported the IJ's and BIA's conclusions that Hassan was unlikely to be tortured for minority-clan membership.

Second, Hassan challenges the IJ's and BIA's conclusions that any torture by Al-Shabaab does not qualify for CAT relief because the Somali government would not acquiesce in such torture. Our "inquiry into whether a government acquiesces centers upon the willfulness of a government's non-intervention." *Ramirez-Peyro v. Holder*, 574 F.3d 893, 899 (8th Cir. 2009) (internal quotation marks omitted). "A government does not acquiesce in the torture of its citizens merely because it is aware of torture but powerless to stop it, but it does cross the line into acquiescence when it shows willful blindness toward the torture of citizens by third parties." *Id.*

Here, the record does not show that the Somali government has willfully turned a blind eye to Al-Shabaab's activities. In fact, it shows the opposite. The

Somali government is actively fighting to control Al-Shabaab, has considerably reduced Al-Shabaab's military capacity, and has demonstrated a willingness to fight terrorism. Hassan counters that the Somali government's amnesty program for certain Al-Shabaab members shows acquiescence. But the Somali government is using the amnesty program to encourage defections as part of its fight against Al-Shabaab. Hassan also argues that Al-Shabaab has managed to infiltrate parts of the Somali government. Yet Hassan does not explain how general infiltration (or the amnesty program) makes the Somali government likely to acquiesce in *his* torture. *See Lasu*, 970 F.3d at 966 (explaining that someone seeking CAT relief must show he "would be personally at risk"). Additionally, Hassan's assertion that the Somali government and Al-Shabaab act in concert to torture people is wholly without record support.

Hassan's real grievance is that the Somali government has been unable to control Al-Shabaab. "But the fact that the Somali government has not successfully ended the threat posed by Al-Shabaab violence is insufficient to establish that the torture would be with the consent or acquiescence of a government official." *Moallin v. Barr*, 980 F.3d 1207, 1210-11 (8th Cir. 2020) (internal quotation marks and brackets omitted). In sum, substantial evidence supported the IJ's and BIA's conclusions that the Somali government was unlikely to acquiesce in any torture by Al-Shabaab.[1] Accordingly, we need not consider the IJ's and BIA's separate findings that Hassan was unlikely to be tortured by Al-Shabaab and that Hassan could safely relocate to Mogadishu to avoid torture by Al-Shabaab. *See id.* at 1211 (doing the same); *Menjivar v. Gonzales*, 416 F.3d 918, 922-23 (8th Cir. 2005) (denying CAT relief for failure to show acquiescence).

---

[1]Hassan also suggests that torture by Al-Shabaab triggers CAT relief because, in parts of Somalia, Al-Shabaab is the *de facto* government. We decline to consider this claim because Hassan has offered no supporting legal authority and only cursory supporting arguments. *See, e.g.*, *Heuton v. Ford Motor Co.*, 930 F.3d 1015, 1023 (8th Cir. 2019) ("[W]e regularly decline to consider cursory or summary arguments that are unsupported by citations to legal authorities."); *Perez v. Holder*, 430 F. App'x 548, 550 (8th Cir. 2011) (holding a CAT claim had been waived because the petitioner's "brief ma[de] no meaningful argument in support").

Finally, Hassan argues that the IJ and BIA applied the wrong legal standard by failing to consider his aggregate risk of torture and, instead, denied him relief solely because no single risk factor demonstrated a likelihood of torture. *See generally Abdi Omar*, 962 F.3d at 1065 (holding that the BIA must consider "the aggregate risk of torture from all sources"). The IJ and BIA did no such thing. To the contrary, in both their decisions the IJ and BIA expressly indicated that they were considering "all evidence relevant to the possibility of future torture." *See Moallin*, 980 F.3d at 1210; *Abdi Omar*, 962 F.3d at 1065. And both found that Hassan had failed to establish a likelihood of torture only *after* they considered all of Hassan's alleged risk factors. True, the IJ and BIA considered each of Hassan's alleged risk factors individually before concluding Hassan had not established a likelihood of torture. But, as we have explained, "addressing risk factors individually is not inconsistent with analyzing risk in the aggregate as long as the IJ and BIA ultimately consider all factors together." *Moallin*, 980 F.3d at 1210 (internal quotation marks and alterations omitted).

Nonetheless, Hassan insists that the IJ and BIA erred by "not expressly consider[ing] all risk dynamics together" and not "devot[ing] meaningful space in [their] final order[s] to aggregating risk." But our precedent does not require a separate or lengthy aggregation analysis. Rather, as our prior circuit decisions demonstrate, it is enough that the record indicates the IJ and BIA considered the risk of torture in the aggregate. *See id.* at 1210; *Abdi Omar*, 962 F.3d at 1065. We are satisfied the IJ and BIA did so here.

For the foregoing reasons, we deny Hassan's petition.

_____