# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-3621
_____

Mongong Kual Maniang Deng

*Petitioner*

v.

Merrick B. Garland, Attorney General of the United States

*Respondent*
_____

Petition for Review of an Order of the
Board of Immigration Appeals
_____

Submitted: June 13, 2023
Filed: August 25, 2023
_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.
_____

LOKEN, Circuit Judge.

Petitioner Mongong Deng is a Sudanese national born in 1991 in modern-day South Sudan. He entered the United States as a refugee in 2003. In 2012, following juvenile felony and misdemeanor convictions, the Department of Homeland Security commenced removal proceedings when Deng was convicted of attempted murder and unlawful firearm possession and sentenced to 264 months imprisonment. Deng

conceded removability and applied for asylum, withholding of removal, and deferral of removal under the Convention Against Torture ("CAT"). The Immigration Judge ("IJ") found Deng ineligible for asylum and withholding of removal because the latest conviction was an aggravated felony and a particularly serious crime.[1]

After a hearing at which Deng testified, the IJ designated South Sudan as the country of removal and denied deferral of removal. Although finding Deng's testimony credible, the IJ found him "no more likely to be [the] subject of harm or torture than anyone else . . . in South Sudan." Deng appealed the denial of CAT relief. The Board of Immigration Appeals ("BIA") dismissed the appeal, concluding Deng's "generalized evidence" of country conditions did not establish that the IJ clearly erred in finding that Deng failed to demonstrate he was "personally at risk of torture," either because he was a former child soldier for an army that opposed South Sudan, or because of his post-traumatic stress disorder ("PTSD"). Matter of Mongong Kual Maniang Deng, AO79-945-475 (BIA Nov. 22, 2022). Deng petitions for judicial review of the denial of CAT relief.

To warrant deferral of removal, Deng must show it is more likely than not the government of South Sudan would torture him if he returned. See 8 C.F.R. §§ 1208.17(a), 1208.16(c). We review the BIA order, "including the IJ's findings and reasoning to the extent they were expressly adopted by the BIA." Silvestre-Giron v. Barr, 949 F.3d 1114, 1117 (8th Cir. 2020) (quotations omitted). Likelihood of torture is a question of fact. Lasu v. Barr, 970 F.3d 960, 966 (8th Cir. 2020). The BIA reviews an IJ's determination regarding the likelihood of future torture for clear error, "and we review the BIA's clear error determination for substantial evidence." Id. Under this highly deferential standard, findings are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." Nasrallah v. Barr, 140

---

[1]See 8 U.S.C. §§ 1101(a)(43)(A, F); 1158(b)(2)(A)(ii) and (b)(2)(B)(i); 1231(b)(3)(B)(ii).

S. Ct. 1683, 1692 (2020); see 8 U.S.C. § 1252(b)(4)(B). Applying this standard, we deny the petition for review.

## I. Background

At the removal hearing, Deng testified about his childhood, when Sudan was in the midst of a forty-year civil war between the northern army and the secessionist southern army. Both sides recruited thousands of child soldiers to fight for them. When Deng was eight, northern Sudanese soldiers entered his village in what is now South Sudan, kidnapped Deng and other children, took them to the northern army camp, and trained them as soldiers. For a year, Deng was forced to travel to other villages with the child soldiers, kidnapping children and killing or maiming anyone who interfered. Deng escaped when he was nine and returned to his village. He testified that a neighbor told him his family had reported to "the South Sudan government" that Deng had been kidnapped and "the South Sudanese army don't have me . . . [s]o they know that, that I've been kidnapped by the northern." The neighbor told Deng his family had gone to Egypt. Deng fled southern Sudan in 1999 or 2000, reunited with his family, and lived in Egypt from 2001 to 2003.

Deng and members of his family came to the United States in June 2003. He was admitted as a refugee but never adjusted his status to lawful permanent resident. South Sudan became independent in 2011. The southern rebel army became South Sudan's ruling party. The Department of State's South Sudan 2020 Human Rights Report states that, in 2013, a power struggle within the South Sudan ruling party erupted into armed conflict. Recruitment and use of child soldiers by both government and anti-government forces increased. The conflict persisted despite cease fire agreements until a 2018 peace agreement reduced hostilities on the national level. Deng submitted country condition reports showing that violence and security force abuses continued in wide portions of South Sudan, and that the South Sudan government regularly targets perceived or actual political opponents.

Deng submitted an affidavit by his grandmother, who fled to Egypt with the family and was there when Deng arrived. She averred that she learned from others fleeing Sudan that her husband, Deng's grandfather, "had been kidnapped and tortured by the northern army . . . . because the army were looking for Mongong who had escaped." She did not know if her husband was still alive. She also expressed fear "that if Mongong returns to South Sudan . . . he could be killed or tortured" because the South Sudan government "will know that he was taken by the northern forces during the civil war and that he was a child soldier and they will kill him because of his involvement in war."

Deng presented evidence he has serious mental health issues arising from his horrific childhood. He developed depression, paranoia, and panic attacks. He hears voices and is afraid that the families of individuals he hurt are looking for him. He has frequent nightmares about the people he hurt and individuals trying to hurt him in revenge. When his symptoms emerge, Deng fights individuals he interacts with, afraid that they are "the one[s] . . . trying to get me." He frequently fought while in prison. He was ultimately diagnosed with PTSD.

In denying deferral of removal under the CAT, the IJ acknowledged that "South Sudan is generally a dangerous country for anyone who lives there" but found no specific evidence indicating Deng "would be targeted or personally at risk." The IJ believed the South Sudan government would understand Deng was kidnapped by the northern army and forced to be a child soldier many years ago, during a period of civil war. The IJ also found it "purely speculative" that Deng would be tortured due to his mental illness. The claim that Deng would publicly show symptoms, be reported to authorities, and then imprisoned and tortured by the government was "a series of suppositions" that was unlikely to occur.

In dismissing Deng's appeal, the BIA concluded that the IJ's likelihood-of-torture finding was not clearly erroneous; that Deng's "general country conditions

evidence" is not "sufficient to establish that he is *personally* at risk of torture;" agreed with the IJ's finding that Deng's mental illness claim was speculative; and concluded that Deng did not "sufficiently show[] that each of the hypothetical events relevant to his claim of torture will more likely than not occur."

## II. Discussion

Deng's brief ignores our governing standard of review. It attacks "the agency's findings" as clearly erroneous and accuses "the agency" of disregarding evidence Deng submitted in support of his claim that he showed that specific grounds "exist that indicate the individual would be personally at risk." Ademo v. Lynch, 795 F.3d 823, 831 (8th Cir. 2015) (quotation omitted). We review the BIA's decision, including facts found by the IJ that the BIA adopted, under the substantial evidence standard. If the BIA did not adopt an IJ finding -- as is true of many "agency" findings Deng attacks in his brief -- that finding is not subject to our review. We will review the BIA's decision under the appropriate standard.

A. Former Child Soldier. First, Deng argues he presented evidence showing a particularized likelihood of future torture by the government of South Sudan because he is a former child soldier of the northern army who fought against the rebellious southern army in a forty-year civil war that ended before South Sudan became an independent country in 2011. In support, Deng proffered country condition reports stating that South Sudan security forces target and torture perceived political opponents. The BIA concluded "this generalized evidence is not sufficient to establish that he is personally at risk of torture." We agree. "[T]he existence of a consistent pattern of gross, flagrant, or mass violations of human rights in a particular country does not . . . constitute a sufficient ground for determining that a particular person would be in danger of being subjected to torture." Lasu, 970 F.3d at 966 (quotations omitted).

-5-

Deng presented no specific evidence that the government attacks "political opponents" because they were child soldiers in a civil war that ended before South Sudan's independence. Deng left South Sudan 24 years ago and has no contacts with anyone there. He admits he knows no former child soldiers who have had problems with the South Sudan government in recent years. His proffered evidence that the South Sudan government looked for him in the past is dated, vague, and highly ambiguous. See Chuor v. Garland, 43 F.4th 820, 824 (8th Cir. 2022). If anything, Demg's testimony and his grandmother's affidavit support inferences that the *northern* army looked for him after he escaped their child soldier forces in 1999, and that Deng's family assured the *southern* rebel army (now South Sudan's ruling party) that Deng had been kidnapped by the northern forces and forced to serve as one of their child soldiers. Deng's grandmother did express fear that the South Sudan government might torture Deng for his involvement in war. But applying the substantial evidence standard, this does not establish BIA error. Evidence that the southern army looked for Deng almost 25 years ago is not evidence that the current government of South Sudan will be looking for him now. See id.

B. Mental Illness. Deng argues he presented sufficient evidence he would be tortured due to his mental illness if he returned to South Sudan. Citing country conditions evidence, he argued "that upon return to South Sudan (1) he will not have access to medications or mental health treatment, (2) he will experience a mental health crisis, (3) he will be detained by the authorities, and (4) the treatment he will receive in a detention center will amount to torture." The BIA agreed with the IJ that "even if [Deng] had difficulties receiving mental health treatment in South Sudan and exhibited symptoms of mental illness, this country conditions evidence does not demonstrate he would subsequently be reported to the authorities, detained, and tortured by the government," citing our prior holding that "[i]t is the likelihood of all necessary events coming together that must more likely than not lead to torture, and a chain of events cannot be more likely than its least likely link." Mohamed v. Garland, 9 F.4th 638, 641 (8th Cir. 2021), quoting Matter of J-J-F-, 23 I. & N. Dec.

-6-

912, 917-19 (A.G. 2006); see Jima v. Barr, 942 F.3d 468, 473 (8th Cir. 2019). The BIA affirmed the IJ's finding that Deng "has not sufficiently shown that each of the hypothetical events relevant to his claim of torture will more likely than not occur."

On appeal, Deng argues "the agency's findings are clearly erroneous," citing only IJ findings: the chances he will exhibit PTSD symptoms "are 100%," he will not receive treatment and the chances of incarceration "are very high," and the chances that he will be willfully tortured or killed in prison, either because of his mental illness or because he fought against South Sudan as a child soldier, "are very high." Deng simply ignores our holding in Mohamed regarding the least likely link in a chain of events, on which the BIA appropriately relied.

We agree with the BIA that Deng has not shown in his "hypothetical chain of events" that "it was more likely than not that each link in the chain would occur." Gilbertson v. Garland, 7 F.4th 700, 706 (8th Cir. 2021) (quotations omitted). The claim he would be incarcerated for his mental health condition and then targeted in prison for being a former child soldier is speculative for the reasons stated earlier. See Denis v. Att'y Gen. of U.S., 633 F.3d 201, 218 (3d Cir. 2011).

Country conditions evidence that persons with mental disabilities are often held in prison and may remain in detention without treatment for undetermined periods do not compel the conclusion the BIA erred. The reports provide little information on the frequency of incarceration. They provide no particularized evidence that Deng, with *his* specific mental health symptoms, is likely to be incarcerated and tortured for that reason. See Abdi Omar v. Barr, 962 F.3d 1061, 1065 (8th Cir. 2020); Medina-Moreno v. Barr, 841 F. App'x 72, 77 (10th Cir. 2020). Anecdotal reports of torture at prisons "are not sufficient to support a finding that [Deng] in particular is likely to be imprisoned and tortured if returned from the United States." Keta v. Garland, 44 F.4th 747, 752 (8th Cir. 2022).

Moreover, even if Deng were incarcerated -- which is certainly quite possible given his criminal history in this country -- he presented no evidence showing that conditions inside the prison would amount to torture. "Substandard prison conditions are not a basis for CAT relief unless they are intentionally and deliberately created and maintained . . . in order to inflict torture." Alemu v. Gonzales, 403 F.3d 572, 576 (8th Cir. 2005) (cleaned up). Deng points to the 2021 Department of State South Sudan "Human Rights Report," which stated that "persons with disabilities were often victimized" by the government and described disturbing conditions in rural prisons. But "[e]vidence of general conditions is insufficient to establish that one is more likely than not to suffer torture." Nadeem v. Holder, 599 F.3d 869, 873-74 (8th Cir. 2010). And "abusive or squalid conditions . . . that result from a lack of resources rather than a specific intent to cause severe pain or suffering" do not establish torture under CAT. Gonzales v. Garland, 29 F.4th 989, 997 (8th Cir. 2022). Though rural prison conditions in South Sudan may be poor, "the reports in the record do not indicate that mentally ill inmates are singled out for torture for discriminatory reasons or as a form of punishment." Fahmy v. Holder, 576 F. App'x 524, 530 (6th Cir. 2014).

For the foregoing reasons, we deny the petition for review.

_____