# United States Court of Appeals

## For the Eighth Circuit

_____

No. 18-3269
_____

Victor Perez-Rodriguez

*Petitioner*

v.

William P. Barr, Attorney General of the United States

*Respondent*

_____

Petition for Review of an Order of the
Board of Immigration Appeals

_____

Submitted: October 18, 2019
Filed: March 9, 2020

_____

Before SMITH, Chief Judge, GRUENDER and BENTON, Circuit Judges.

_____

SMITH, Chief Judge.

Victor Perez-Rodriguez entered the United States from Mexico at an unknown date and was eventually detained. The Department of Homeland Security (DHS) sought to remove him. He does not contest his removability. Instead, he seeks asylum, claiming he belongs to a particular social group. This group consists of "individuals with schizophrenia who exhibit erratic behavior" ("the group"). This petition for

review turns on whether Mexico's government persecutes individuals *because* they belong to that group.

The Board of Immigration Appeals (BIA) denied Perez-Rodriguez's asylum request because it found no connection between the alleged persecution and the group. Applying a substantial evidence standard, we conclude that the record is not so substantial "that a reasonable factfinder would have to conclude that" Mexico's government targets individuals on account of group membership. *Garcia-Moctezuma v. Sessions*, 879 F.3d 863, 869 (8th Cir. 2018) (cleaned up). Consequently, we deny the petition.

## I. *Background*

After an immigration judge (IJ) sustained a charge of removability, Perez-Rodriguez submitted an asylum application. To support his application, Perez-Rodriguez introduced evidence regarding conditions in Mexico's mental-health facilities. The parties agree that those conditions are markedly substandard. Patients are referred to as the *abandanodos*—the abandoned ones. According to uncontested evidence, individuals are often bound, sometimes for extended periods, to prevent self harm. Others are left in isolation. Some patients were observed sitting in their own bodily wastes. Further, the record contains stories of patients suffering rape and abuse at the hands of medical personnel.

The Mexican government has long been aware of these conditions. Perez-Rodriguez argues that the Mexican government allows those conditions to persist "because it believes its methods are consistent with the [population's] view of the mentally ill." Pet'r's Br. at 29.

The IJ granted Perez-Rodriguez's asylum request. The BIA reversed, concluding that Perez-Rodriguez had failed to show (1) that his fear of persecution met the standard of objective reasonableness because family members could provide

him care and (2) that he would be institutionalized if returned. On remand, the IJ determined that Perez-Rodriguez's evidence established that the Mexican government would place him in a mental-health institution. Further, she found that the conditions within those institutions constituted government persecution. The IJ then went on to discuss the physical restraints used with many of the patients. She noted that mental-health workers were motivated by a desire to overcome the patients' erratic behavior—one of the group's defining characteristics. Thus, the IJ again granted Perez-Rodriguez's asylum request.

The BIA found that the IJ clearly erred in finding that Perez-Rodriguez "would be subjected to persecutory harm *on account of* his particular social group membership if detained in a mental health facility." Pet'r's Add. at 3 (emphasis added). Specifically, the BIA found that there was insufficient evidence to establish "that the health care workers would be motivated to harm the respondent on account of his status as a member of [the] proposed social group." *Id.* at 4. The BIA acknowledged that some patient injuries resulted from individual criminal actions of their particular facility worker. However, it concluded that medical workers, in general, constrained individuals in an effort to protect them, not target them. Further, patients often received poor care due to a severe lack of resources. As a result, the BIA found that the IJ clearly erred in finding that the record reflected "a persecutory motive" on the part of the government of Mexico. *Id.* Perez-Rodriguez then petitioned this court for review.

## II. *Discussion*

Before this court, Perez-Rodriguez argues that the BIA erred in reversing the IJ's finding that he has a well-founded fear of future persecution due to the characteristics of his mental illness. Applying a clearly erroneous standard, *see Jima v. Barr*, 942 F.3d 468, 473 (8th Cir. 2019), the BIA found that the evidence failed to establish a persecutory motive for the conditions present in Mexican mental institutions. We discern no error in this conclusion.

Perez-Rodriguez can qualify for asylum if he "is unwilling to return to [his] country of nationality 'because of . . . a well-founded fear of persecution on account of . . . membership in a particular social group.'" *Corado v. Ashcroft*, 384 F.3d 945, 947 (8th Cir. 2004) (per curiam) (quoting 8 U.S.C. § 1101(a)(42)(A)). "To qualify for asylum, [Perez-Rodriguez] must show that a protected ground 'was or will be at least *one central reason* for persecuting [him].'" *Garcia-Moctezuma*, 879 F.3d at 867 (quoting 8 U.S.C. § 1158(b)(1)(B)(I)). "Under the one central reason nexus standard, a protected ground need not be the sole reason for persecution, but the protected ground cannot be incidental or tangential to the persecutor's motivation." *Id.* at 868 (internal quotations omitted).

"We review the agency determination that an alien is not eligible for asylum" under "the deferential substantial evidence standard." *Juarez Chilel v. Holder*, 779 F.3d 850, 853 (8th Cir. 2015) (internal quotations omitted). "Thus, we will reverse only if we determine that a reasonable factfinder *would have to conclude* that" Perez-Rodriguez's group membership "actually and sufficiently motivated his persecutors' actions." *Garcia-Moctezuma*, 879 F.3d at 869 (internal quotations omitted).

Based on the record before us, we hold that a reasonable factfinder would not have to conclude that group membership actually and sufficiently motivated the Mexican government's acts or inaction toward the group. As in all asylum cases, the record must show that the persecutor was acting "on account of" protected status. The BIA concluded that the tragic stories cited by Perez-Rodriguez do not establish such a persecutory motive. Instead, it found other factors led to the alleged mistreatment.

Specifically, as the BIA noted, economic considerations contribute substantially to the regrettable institutional conditions. In so concluding, the BIA relied on *Mendoza-Alvarez v. Holder*, 714 F.3d 1161 (9th Cir. 2013) (per curiam). There, the Ninth Circuit upheld the BIA's determination that an insulin-dependent

-4-

diabetic did not qualify for asylum from a country that lacked an insulin supply. *Id.* at 1164–65. The court noted that "[i]f someone suffers harm on grounds that are associated with group membership but also apply to many others, then the harm is not because of membership in a particular social group and there is no basis to conclude that the group members were intentionally targeted." *Id.* at 1165. It went on to say that, "[a]s the BIA and the courts have recognized, an inadequate healthcare system is not persecution and is not harm inflicted because of membership in a particular social group." *Id.* (citing *Ixtlilco-Morales v. Keisler*, 507 F.3d 651, 655–56 (8th Cir. 2007) ("The BIA further concluded that [the petitioner] failed to establish that inadequacies in health care for HIV-positive individuals in Mexico was an attempt to persecute those with HIV. Our review of the record convinces us that these conclusions are supported by substantial evidence.")).

Perez-Rodriguez argues that the record only minimally supports a lack of resources. He attempts to distinguish this case from *Mendoza-Alvarez.* He argues that the alleged group in *Mendoza-Alvarez* was too amorphous, but his is not. This argument fails. Perez-Rodriguez's expert testified that Mexican officials attribute the lack of improvement in their mental-health institutions to economic considerations. Further, his exhibits indicate that Mexico "spends less on its entire mental health system than it takes to operate just one US hospital." Pet'r's App. at 324. In *Raffington v. INS*, we noted that an asylum seeker's "medical provider's concern and the Pan American Health Organization's report that Jamaica devotes limited resources to treating those who are mentally ill do not establish a pattern of persecution on account of this disability." 340 F.3d 720, 723 (8th Cir. 2003). So too here. Mexico's inability to adequately fund mental-health institutions does not establish that the government has a pattern of persecuting individuals with a specific form of schizophrenia. Rather, like *Mendoza-Alvarez*, it shows a lack of resources and insufficient political commitment.

*Mendoza-Alvarez* did involve more generalized concerns than those at issue here. Nonetheless, the Ninth Circuit's rationale regarding the absence of nexus between the conditions and a persecutory motive applies. When a harm affects many other persons who do not belong to the alleged social group, the alleged persecutor is much less likely to be targeting the group based on its identity. *See Mendoza-Alvarez*, 714 F.3d at 1165 ("If someone suffers harm on grounds that are associated with group membership but also apply to many others, then the harm is not because of membership in a particular social group and there is no basis to conclude that the group members were intentionally targeted."). Here, all individuals entering Mexico's mental-health institutions face the same conditions. The one additional condition that individuals who exhibit erratic behavior might face is physical restraint. But there is no evidence that the government mandates that restraint. Instead, as the BIA noted, the evidence from Perez-Rodriguez's expert indicates that healthcare workers generally restrain patients who exhibit erratic behavior to prevent them from harming themselves and others.

Political considerations also affect institutional conditions. Perez-Rodriguez's expert stated that the institutions' staffs are unionized, so any solutions that decrease the number of these positions run into opposition. Further, contrary to Perez-Rodriguez's position, the record shows that the Mexican government has attempted to address the situation. Perez-Rodriguez's expert indicated that he attended a conference where speakers from the Mexican government noted the need for reform. Also, the Mexican government attempted to pass a law to improve conditions by moving individuals from large, single-building facilities to small group houses. Although the expert did not believe that this would actually remedy the circumstances in the long run, the record indicates that similar measures were effective and preferable to patients.

In summary, the evidence that the Mexican government persecutes certain mentally-ill citizens on account of group membership is not so substantial as to

compel remand. Perez-Rodriguez argues that case law and a subsequent BIA decision counsel otherwise. He cites to *Temu v. Holder*, 740 F.3d 887 (4th Cir. 2014). There, a mentally disabled Tanzanian was abused in a hospital and prison because of his disability. *Id.* at 889–90. In the hospital and prison, he was referred to as *mwenda wazimu*, demon possessed, a common pejorative for the mentally disabled in Tanzania. *Id.* at 890. As his symptoms worsened, so did the nurses' treatment. *Id.* In the prison, he was beaten and told "this is how we treat people who are mentally ill like you." *Id.* Given the cultural context and harm suffered by the defendant, the court overruled the BIA's denial of asylum. *Id.* at 891–92.

*Temu* is distinguishable. Although some institutionalized individuals in Mexico suffer greatly, the record does not indicate that the government or health care workers intentionally mistreat patients because of their mental-health conditions. Further, unlike the petitioner in *Temu*, Perez-Rodriguez has not suffered any past harm on account of his disability, and there is no indication that anyone has verbally threatened him or a similarly situated individual because of their mental illness.

Perez-Rodriguez also cites a recent, unpublished BIA decision that found a mentally impaired individual faced likely persecution in Mexico's mental-health institutions because of his social group. *See* Pet'r's Add. at 49–51 (citing *In re M.P.R.* (BIA Nov. 14, 2018) (unpublished)). The same panel member that decided Perez-Rodriguez's case decided that case. Perez-Rodriguez argues that the inconsistency between the two opinions should lead us to "conclude that . . . a reasonable adjudicator would have to reach the opposite conclusion to the one reached" in his case. Pet'r's Br. at 41.

*In re M.P.R.* is an unpublished BIA decision. BIA regulations indicate that published, precedential decisions "serve as precedents in all proceedings involving the same issue or issues," 8 C.F.R. § 1003.1(g)(3), not unpublished opinions. Although we have noted that unpublished BIA decisions are due some amount of

deference when offering *legal interpretations*, *see Godinez-Arroyo v. Mukasey*, 540 F.3d 848, 850–51 (8th Cir. 2008), nothing in our case law indicates that we have extended the same deference to *issues of fact*. This would be especially true where the decision contains little analysis. When reviewing factual matters, this court must consider "the record as a whole," *Feleke v. INS*, 118 F.3d 594, 598 (8th Cir. 1997), and immigration cases often have "voluminous record[s]." *Rodriguez-Quiroz v. Lynch*, 835 F.3d 809, 817 (8th Cir. 2016). In contrast, *In re M.P.R.* is three pages in length with roughly one page of relevant discussion. *See* Pet'r's Add. at 49–51. The absence of well-considered analysis diminishes substantially the persuasive use of *In re M.P.R.* Therefore, we decline to give *In re M.P.R.* controlling deference.

In short, under a substantial evidence review, we conclude that the BIA did not err in concluding that Perez-Rodriguez failed to establish that he would be subjected to persecution on account of his membership in the alleged social group.

## III. *Conclusion*

For the foregoing reasons, we deny Perez Rodriguez's petition.

_____