# Matter of L-A-D-, Respondent

*Decided May 22, 2026*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) The group "Mexican men with Schizoaffective Disorder," defined only by such diagnosis, is not cognizable as a particular social group under the Immigration and Nationality Act.

(2) A series of speculative occurrences that also lack evidence of persecutory intent is insufficient to demonstrate a well-founded fear of persecution.

FOR THE RESPONDENT: Hannah C. Nguyen, Esquire, Los Angeles, California

FOR THE DEPARTMENT OF HOMELAND SECURITY: Shana Martin, Assistant Chief Counsel

BEFORE: Board Panel: GOODWIN and VOLKERT, Appellate Immigration Judges; MCCLOSKEY, Temporary Appellate Immigration Judge.

MCCLOSKEY, Appellate Immigration Judge:

The Department of Homeland Security ("DHS") appeals the Immigration Judge's June 13, 2025, decision granting the respondent's application for asylum under section 208(b)(1)(A) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158(b)(1)(A) (2024). The respondent, a native and citizen of Mexico, opposes the appeal. We will sustain the appeal, vacate the Immigration Judge's decision granting asylum, and remand the record to the Immigration Court.

The Immigration Judge granted the respondent asylum based on a well-founded fear of future persecution on account of his proposed particular social group of "Mexican men with Schizoaffective Disorder." The respondent has been diagnosed with Schizoaffective Disorder, Bipolar Disorder, Major Depressive Disorder, Posttraumatic Stress Disorder, Intellectual Disability, Major Neurocognitive Disorder, Delusional Disorder, and Unspecified Anxiety Disorder.[1] The respondent fears that he will be

---

[1] The Immigration Judge conducted a competency hearing, found the respondent not competent to represent himself, and appointed a qualified representative. The Immigration Judge also determined that the respondent's serious mental disabilities constitute an

detained in a Mexican mental health institution and subjected to persecutory harm on account of his membership in the proposed particular social group.

To be cognizable, the respondent's proposed particular social group of "Mexican men with Schizoaffective Disorder" must be "(1) composed of members who share a common immutable characteristic, (2) defined with particularity, and (3) socially distinct within the society in question." *Matter of M-E-V-G-*, 26 I&N Dec. 227, 237 (BIA 2014). Particular social groups related to mental illnesses present distinct cognizability challenges. The Board has long recognized that mental illness is not a static condition. *Matter of M-A-M-*, 25 I&N Dec. 474, 480 (BIA 2011). Individuals with the same diagnosed mental illness may exhibit vastly different symptoms. "Mental illness . . . varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways." *Indiana v. Edwards*, 554 U.S. 164, 175 (2008). Medication and treatment also may impact if, when, or how the symptoms of mental illnesses manifest.

In most cases, a particular social group based on a diagnosis alone will not be cognizable, considering the broad spectrum of severity and symptoms covered and the extent to which such symptoms are reasonably controlled by medication. *See, e.g., Temu v. Holder*, 740 F.3d 887, 895 (4th Cir. 2014) (explaining that mental illness "covers a huge swath of illness that ranges from life-ending to innocuous"). To establish particularity, a respondent may narrow an otherwise overbroad diagnosis with behaviors or symptoms of the disease. *See, e.g., id.* (finding that the breadth of the term "bipolar disorder" was limited by the requirement of "erratic behavior" in the proposed group). However, "[a] component of a proposed social group can narrow the group while at the same time failing to provide clear boundaries for ascertaining who is a member of the group." *Andrade v. Garland*, 94 F.4th 904, 914 (9th Cir. 2024). Therefore, it is insufficient to present undefined, potential symptoms that could be present with a diagnosis. *See, e.g., id.* at 912–13 (observing that, "absent appropriate record-based evidence, terms associated with mental health can otherwise 'lack[] precision'" (quoting *Granados v. Garland*, 992 F.3d 755 (9th Cir. 2021))). A respondent must sufficiently define the symptoms to set forth a benchmark for determining who falls within the group. A respondent must then establish that he or she exhibits the delineated symptoms to be a member of the group. An Immigration

___

extraordinary circumstance for purposes of the 1-year filing deadline. The respondent's competency and the timeliness of his asylum application are not at issue on appeal.

Judge must also consider factors related to immutability, such as the impact of treatment and medication, as well as the nature of the condition itself.

In this case, we determine that the Immigration Judge erred in finding that the respondent's proposed particular social group of "Mexican men with Schizoaffective Disorder" is cognizable.[2]   To satisfy the particularity requirement, a group must "be discrete and have definable boundaries" and cannot "be amorphous, overbroad, diffuse, or subjective." *Matter of M-E-V-G-*, 26 I&N Dec. 227, 239 (BIA 2014).  The term "schizoaffective disorder" covers a broad spectrum of behavior exhibited with varying degrees of severity.  The proffered group does not include any limiting language to narrow its breadth.  Although the Immigration Judge found the respondent's proposed group was defined by "psychotic symptoms including grandiose and persecutory delusions, auditory and visual hallucinations, as well as disorganized thinking and behavior," these symptoms are not defined in the record nor included in the proposed group.[3]  *See, e.g., Andrade*, 94 F.4th at 911 (finding that the group "Mexicans with mental health disorders characterized by psychotic features who exhibit erratic behavior" was not sufficiently particular because "erratic behavior" was not defined in the record).  Thus, the respondent's proposed particular social group lacks the particularity required to be cognizable under the INA.

The respondent has also not established his proposed particular social group is sufficiently socially distinct.  Social distinction requires a "showing that society in general perceives, considers, or recognizes persons sharing the particular characteristic to be a group." *Matter of W-G-R-*, 26 I&N Dec. 208, 217 (BIA 2014), *vacated in part on other grounds sub nom. Reyes v. Lynch*, 842 F.3d 1125 (9th Cir. 2016).  For particular social groups related to mental illness, the proper consideration is whether society perceives individuals in the proposed group distinctly, not whether a doctor or psychologist would view one mental illness as distinct from another.  We do not doubt that a

---

[2]  On appeal, the respondent does not assert that his proposed particular social groups of "bisexual Mexican men," "Mexican men who are HIV positive," and "Mexican men with a history of drug use" are cognizable.  Therefore, we deem these aspects of the respondent's claims to be waived.  *See Matter of P-B-B-*, 28 I&N Dec. 43, 44 n.1 (BIA 2020) (stating that arguments not raised on appeal are deemed waived).

[3]  Even if the respondent included these symptoms in his proffered group, he has not presented evidence establishing the onset or duration of his symptoms, or effect of medication on the expression of such symptoms.  While the record reflects that the respondent has a history of his illness, identifying symptoms were not present while the respondent lived in Mexico, where he was never medicated or identified as having a mental illness.

mental health professional would view an individual with schizoaffective disorder as distinct from someone with bipolar disorder, for example. However, the social distinction analysis requires the respondent to demonstrate that "society in general" considers the group to be distinct. *Id.*

Here, to establish social distinction, the respondent must demonstrate that Mexican society perceives men diagnosed with schizoaffective disorder as a distinct group within society. The Immigration Judge relied on generalized country conditions evidence of stigma against mentally ill individuals in general, rather than analyzing society's perception of individuals with schizoaffective disorder. Evidence suggests that Mexican society may perceive those who exhibit certain symptoms, such as erratic or bizarre behaviors, as a distinct group. However, these symptoms may be present with various mental illnesses or other conditions such as drug abuse or intoxication. Although outward visibility is not required, the respondent only points to limited anecdotal evidence that Mexican society considers those diagnosed with schizoaffective disorder as a distinct group regardless of the presence of symptoms. *See Matter of* W-G-R-, 26 I&N Dec. at 216 (explaining that literal or "ocular" visibility is not required). As the respondent's proposed particular social group includes all Mexican men diagnosed with schizoaffective disorder, whether they display symptoms or not, the record does not establish that Mexican society views the entire group defined solely by a diagnosis as socially distinct.

Accordingly, we conclude that the group "Mexican men with Schizoaffective Disorder," defined only by such diagnosis, is not cognizable under the INA. Because the respondent's proposed particular social group is not particular or socially distinct within the meaning of the INA, it does not provide a basis for asylum.[4]

Even if "Mexican men with Schizoaffective Disorder" were a cognizable particular social group, the respondent has not shown a well-founded fear of persecution because the likelihood of future harm is speculative. The Immigration Judge's determination relies on the occurrence of a series of events: (1) the respondent is unable to get effective medication in Mexico; (2) he displays erratic behavior; (3) the erratic behavior causes him to come to the attention of authorities; (4) the authorities respond by institutionalizing him; and (5) while institutionalized, he is persecuted on account of his

---

[4]   Although the Immigration Judge did not properly consider the impact of any medication or treatment on the respondent's illness in the immutability analysis, we deem it unnecessary to remand for reassessment of immutability as the lack of particularity and social distinction is dispositive on the issue of cognizability.

schizoaffective disorder. The respondent has not established that each step in this series has a reasonable possibility of occurring.

First, the respondent has not shown that he would be unable to receive effective medical care in Mexico. The respondent has been receiving medication and treatment in the United States for his schizoaffective disorder, despite the absence of any family support. Although the respondent asserts that his family would not be able to financially support him and that certain medications are difficult to obtain in Mexico, the record does not establish that his specific medication, or another effective medication or treatment, would be unavailable or too costly for him to access. Moreover, his family supported him with his HIV diagnosis, and, with their support, he was able to receive the proper medication and treatment for his HIV in Mexico.

Even assuming the respondent would not be able to receive proper medication, it is speculative that his subsequent behavior would bring him to the attention of authorities. The respondent lived in Mexico intermittently from 2006 to 2022 without medication and had no interactions with Mexican authorities. Although the respondent came to the attention of authorities in the United States, this occurred due to the respondent's illegal drug use rather than symptoms associated with schizoaffective disorder. Even if the respondent did have interactions with the authorities in Mexico, it is speculative that such an interaction would result in his institutionalization. The record reflects that institutionalization occurs primarily when the individual is unable to live with family. Although the respondent claims he would not have the financial support of his family, he does not assert that his family would deny him housing or otherwise force authorities to resort to institutionalization.

Finally, even if institutionalized, the respondent has not established that the government's actions would constitute persecution on account of his group membership. Involuntary commitment and treatment for potentially dangerous mental illnesses "is a legitimate exercise of [a country's] sovereign authority." *Joshi v. Garland*, 112 F.4th 181, 191 (4th Cir. 2024). The Supreme Court of the United States has long recognized that a "state has a legitimate interest under its *parens patriae* powers in providing care to its citizens who are unable because of emotional disorders to care for themselves." *Addington v. Texas*, 441 U.S. 418, 426 (1979). Poor conditions in a psychiatric institution, a lack of resources, and inadequate medical care are insufficient to demonstrate persecution without a persecutory motive. *See, e.g., Ferchichi v. Bondi*, 128 F.4th 966, 974 (8th Cir. 2025) (recognizing that "an 'absence of [a] nexus between the conditions and a persecutory

motive' negates a finding of inadequate medical care as persecution" (quoting *Perez-Rodriguez v. Barr*, 951 F.3d 972, 975 (8th Cir. 2020))); *Mendoza-Alvarez v. Holder*, 714 F.3d 1161, 1165 (9th Cir. 2013) ("[A]n inadequate healthcare system is not persecution and is not harm inflicted because of membership in a particular social group."). Determining the appropriate allocation of resources to address involuntary mental health treatment is part of a nation's sovereign authority and, thus, well beyond the authority of the Immigration Courts or this Board to assess. *See, e.g., Soobrian v. Att'y Gen. of U.S.*, 388 F. App'x 182, 191 (3d Cir. 2010) (declining to "second-guess the government's allocation of its scarce resources between the mentally well and the mentally ill" because if "a disproportionate allocation of scarce resources alone [is] sufficient to be deemed persecution, we would necessarily become entangled in matters of international budgetary analysis"); *Raffington v. INS,* 340 F.3d 720, 723 (8th Cir. 2003) (explaining that reports that "Jamaica devotes limited resources to treating those who are mentally ill" does not establish persecution).

The evidence in this case does not establish that the either Mexican government or healthcare workers would be motivated by a desire to harm the respondent on account of his membership in his proposed particular social group. *See Matter of W-G-R-*, 26 I&N Dec. at 223 (holding that an applicant has the burden of demonstrating a risk of persecution on account of his membership in a cognizable particular social group). As observed by the Immigration Judge, there are reports of inadequate treatment and incidents of abuse in Mexican mental health institutions. The evidence reflects that health care workers lack sufficient resources and training. However, this lack of resources, even when it results in harm, does not demonstrate the government possesses persecutory intent or is motivated to harm the respondent on account of his membership in a particular social group. *See, e.g., Perez-Rodriguez v. Barr*, 951 F.3d 972, 975 (8th Cir. 2020) (holding that "Mexico's inability to adequately fund mental-health institutions" showed "a lack of resources and insufficient political commitment," but did not demonstrate the government was motivated to persecute individuals with schizophrenia). Additionally, the respondent has not presented evidence that the government guides or encourages healthcare workers to engage in abusive behavior. *See, e.g., id.* at 976 (indicating the government did not have persecutory motive because evidence did not reflect the government mandated the restraint of patients).

The record also does not reflect that healthcare workers would be motivated to persecute the respondent on account of his schizoaffective disorder. *See Matter of A-B-*, 28 I&N Dec. 199, 209 (BIA 2021) (describing a respondent's burden to demonstrate that a protected ground is one central

reason for the decision to target him), *reinstated by Matter of S-S-F-M-*, 29 I&N Dec. 207 (A.G. 2025). The record contains evidence of some incidents of ill treatment that are motivated by criminal intent of health care workers. The evidence also indicates that health care workers sometimes resort to extreme measures in an effort to prevent patients from harming themselves or others, or for noncompliance with policies, but this evidence does not show that such measures are used specifically because patients have schizoaffective disorder. *See, e.g., Perez-Rodriguez*, 951 F.3d at 976 (explaining that healthcare workers restraining "patients who exhibit erratic behavior to prevent them from harming themselves and others" did not constitute persecution); *Angel-Lopez v. U.S. Att'y Gen.*, 853 F. App'x 440, 444–45 (11th Cir. 2021) (per curiam) (finding that "underfunded treatment and insufficient training" did not establish persecutory motive). Accordingly, even if the respondent were institutionalized, he has not shown that his membership in his proposed particular social group would be at least one central reason for the harm he fears.

A series of speculative occurrences that also lack evidence of persecutory intent is insufficient to demonstrate a well-founded fear of persecution. Thus, the Immigration Judge erred in finding the respondent's fear of persecution to be objectively reasonable.

The respondent has also not established a pattern or practice of persecution against Mexican men with schizoaffective disorder. *See* 8 C.F.R. §§ 1208.13(b)(2)(iii) (2020). A pattern or practice of persecution exists when persecution of a group is "systemic or pervasive." *Gonzalez-Aguilar v. Garland*, 29 F.4th 1208 (10th Cir. 2022). Although we acknowledge that those with mental illnesses may experience a variety of harms in Mexico, the record evidence "does not describe persecution so systemic or pervasive as to amount to a pattern or practice of persecution" against men with schizoaffective disorder. *Matter of A-M-*, 23 I&N Dec. 737, 741–42 (BIA 2005).

Accordingly, the respondent has not shown that any feared harm is tied to his membership in a cognizable particular social group or that he has a well-founded fear of future persecution on account of his membership in such a group. Thus, he has not met his burden of proof for asylum. It follows that the respondent has also not met his burden of proof for withholding of removal, which similarly requires a nexus to a protected ground and also requires the higher standard of a clear probability of persecution. *See* INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); 8 C.F.R. § 1208.16(b)(2) (2026). The Immigration Judge did not adjudicate the respondent's claim for protection under the regulations implementing the Convention Against Torture

("CAT").[5]  We will therefore remand the record for the Immigration Judge to consider the respondent's eligibility for CAT protection.

Accordingly, the following orders will be entered.

**ORDER:**  DHS' appeal is sustained, and the Immigration Judge's June 13, 2025, decision granting asylum is vacated.

**FURTHER ORDERED:**  The respondent's applications for asylum and withholding of removal under sections 208(b)(1)(A) and 241(b)(3) of the Immigration and Nationality Act, 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A), are denied.

**FURTHER ORDERED:** The record is remanded to the Immigration Court for further proceedings on the respondent's application for protection under the Convention Against Torture consistent with the foregoing opinion and for the entry of a new decision.

---

[5]  The Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, Dec. 10, 1984, S. Treaty Doc. No. 100-20, 1465 U.N.T.S. 85 (entered into force for United States Nov. 20, 1994).  8 C.F.R. §§ 1208.16(c), 1208.17 (2026); 8 C.F.R. § 1208.18(a) (2020).